Dear Executive Director Ernest
¶ 0 This office has received your request for an Opinion in which you asked, in effect, the following question:
Is it permissible under 70 O.S.Supp. 1994, §§ 697.2[70-697.2] and 625.14to use Physician Manpower Training Commission money to fundresidency programs other than those within the Oklahoma physiciantraining institutions?[1]
¶ 1 The Physician Manpower Training Commission ("Commission") was created at 70 O.S. 1991, §§ 697.1-697.19[70-697.1-697.19] to establish and administer cost-sharing programs for internship and residency physician training programs. While the Commission administers a number of programs providing assistance to physicians, Sections 697.2 and 625.14 provide specifically for the funding of residency programs. Sections 697.2 and 625.14 guide the Commission in the process of selecting and implementing and funding the residency programs.
¶ 2 Before the Commission may fund a residency program, the program must meet the criteria discussed in Sections 697.2 and 625.14. Section 697.2, which was amended in 1992, provides in pertinent part:
 [The] Commission shall provide for state assistance
by sharing the cost on a percentage basis . . . of the salary, fringe benefits, training and program administration of the interns and residents as may be arranged by contract for reimbursement with an accredited and approved hospital and accredited clinical programs throughout the state in cooperation with the Oklahoma State University College of Osteopathic Medicine, which physician training institutions in the state shall serve as the administration agent for internship and residency programs which are located in hospitals and clinical training programs throughout the state, which programs are affiliated with said institutions and approved for funding by the Commission. The Commission shall conduct the planning, coordination and selection of said training programs to assure the effective and efficient operation of these programs.[2]
70 O.S.Supp. 1992, § 697.2[70-697.2] (emphasis added).
¶ 3 The statute establishes four criteria for Commission funding of a program: (1) there must be an accredited and approved hospital or accredited clinical program; (2) the Commission must have a contract with the hospital or clinical program for reimbursement of specified costs; (3) the hospital or clinical program must be "affiliated" with the respective physician training institution; and (4) the hospital or clinical program must be approved for funding by the Commission.
¶ 4 The first requirement is that a prospective hospital be accredited and approved and a prospective clinical program be accredited. Since the statute does not specify who does the accreditation and approval, the question is who must "accredit and approve" the hospitals and clinics for the purposes of Section 697.2. In interpreting the terms it is important to look at the intent of the Legislature. Clifton v. Clifton,801 P.2d 693 (Okla. 1990). While Section 697.5(10) gives the Commission the responsibility to assist hospitals or clinics "in obtaining necessary recognition or status or in meeting standards for accreditation or affiliation," the question of what those specific standards include is not answered by the statutes.
¶ 5 However, the Commission has the power to promulgate rules defining the terms accredited and approved. The basic principle concerning the power of an administrative board to adopt rules and regulations is that the "agency making same be fully authorized to do so either by statutory provision or by implication." W.S. Dickey Clay Mfg. Co., v. Ferguson Inv. Co.,388 P.2d 300 (Okla. 1963). In 70 O.S. 1991, § 697.5[70-697.5](6) the Commission is granted the power to "develop the criteria and procedure" for awarding State matching funds. Therefore, the Commission, pursuant to the authority granted in 70 O.S. 1991, §697.5[70-697.5](6) and in accordance with 75 O.S. 1991, §§ 250-323[75-250-323] may promulgate a rule defining who must accredit and approve these institutions in order for the institutions to receive Commission funds.
¶ 6 The second and fourth requirements are self-explanatory. The second requirement states that the Commission must have a contract with the hospital or clinic for reimbursement of specified costs. The fourth requirement is that the program be approved for funding by the Commission.
¶ 7 The third requirement is for a hospital or clinical program to be "affiliated with" one of the three physician training institutions.[3] The term "affiliated" is not defined in the statute. If a term is not defined in the statute, legislative enactments must be interpreted in accordance with their plain and ordinary meaning according to the import of the language used.In re Certification of Question of State Law, 560 P.2d 195, 197
(Okla. 1977). Affiliate is defined as to "bring or receive into close connection." Webster's Third New International Dictionary 35 (1981). Black's Law Dictionary states that affiliate "signifies a condition of being united; being in close connection, allied, associated, or attached to a member or branch." Black's Law Dictionary 55 (5th ed. 1979).
¶ 8 For additional indication of how "affiliated with" should be defined, it is important to look at the overall intent of the legislation as set forth in 70 O.S. 1991, § 697.1[70-697.1], which states in part:
 Therefore, it is the intent of the Legislature to increase the number of internship and residency programs offered for the training of physicians throughout the state through the sharing by the state of the costs of such internships and residencies with hospitals and other clinical residency training establishments.
¶ 9 The Legislature declares one purpose of the act is to increase the number of internships and residency programs offered throughout the State. Thus, "affiliated with" should be interpreted in a manner which would effectuate that intent. Similar to the criteria of "accredited and approved," the Commission may promulgate rules to define "affiliated with."
¶ 10 The fact that Section 697.2 also requires the physician training institutions to serve as the administrative agent for internships and residency training programs throughout the State bolsters this conclusion. From the reading of the applicable statutes, residency programs other than those offered by the physician training institutions may be funded by the Commission if the programs meet the criteria set forth in the applicable statutes. Such language implies that the training institutions are not the only entities whose residency programs will be funded.
¶ 11 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The provisions of 70 O.S.Supp. 1994, §§ 697.2[70-697.2] and 625.14allow the Physician Manpower Training Commission to fundresidency programs in this State other than those within theOklahoma physician training institutions so long as the programsmeet the criteria set forth in the statutes.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
L. MICHELLE STEPHENS ASSISTANT ATTORNEY GENERAL
[1] Physician training institutions is the phrase used in 70O.S.Supp. 1994, §§ 697.2[70-697.2] and 625.14 to refer to the Oklahoma State University College of Osteopathic Medicine, University of Oklahoma College of Medicine and University of Oklahoma College of Medicine at Tulsa.
[2] Sections 697.2 and 625.14 contain the identical language with the exception that in Section 625.14 Oklahoma State University of Osteopathic Medicine is replaced with University of Oklahoma College of Medicine and the University of Oklahoma College of Medicine at Tulsa. When Section 697.2 is referenced, the analysis applies equally to Section 625.14.
[3] It should be noted that Section 697.2 was amended in 1992 to delete the University of Oklahoma College of Medicine to reflect the name Oklahoma State University College of Osteopathic Medicine. While Section 697.2 refers to plural "physician training institutions," it appears to be a scrivener's error, with Oklahoma State University College of Osteopathic Medicine the only training institution intended to be referenced.